IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DERRICK ROSS,

                Plaintiff,

      v.

INDEPENDENT LIVING RESOURCE OF CONTRA COSTA COUNTY,

                Defendant.

NO. C08-00854 TEH

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

This matter came before the court on March 29, 2010, on the motion to dismiss filed by Defendant Independent Living Resource of Contra Costa County ("ILR" or "Defendant"). For the reasons set forth below, ILR's motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Plaintiff Derrick Ross ("Ross" or "Plaintiff") alleges in his Second Amended Complaint ("SAC")[1] that he started working as a "transition services coordinator" at ILR's facility in Fairfield, California on May 14, 2007, and was terminated on October 3 of that year. Six months before his employment at ILR began, Ross had filed a lawsuit in federal court against Sacramento Basketball Town, LLC ("Basketball Town"), a sports facility in Rancho Cordova, California, for the denial of accessible facilities to him and other disabled patrons. Ross, who is quadriplegic and requires use of a wheelchair, brought that action after he was unable to accompany his nephew and wife to a birthday party held on Basketball

---

[1] "On a motion to dismiss, we take the complaint's allegations of fact as true and construe the complaint in the light most favorable to the plaintiff." *Shanks v. Dressel*, 540 F.3d 1082, 1084 n.1 (9th Cir. 2008).

1 Town's mezzanine level, which was accessible only by stairs. He sought damages and an
2 injunction directing Basketball Town to modify its facilities to provide equal access to
3 individuals with disabilities.[2]

On September 29, 2007, Basketball Town announced that it would be closing the following day, a decision it attributed to the costs of defending against Ross's lawsuit and improving disabled access to its facility. Stories about the closure appeared in newspapers as well as on television and the Internet between September 29 and October 3. A posting to an Internet discussion board identified Ross as an ILR employee based on his appearance on ILR's website, and suggested that those angered by the Basketball Town closure "let [ILR] hear from us." Ross alleges that ILR ultimately learned about the lawsuit through such channels. On October 3, 2007, Ross was summoned into a meeting with his supervisor Susan Rotchy and Eli Gelardin, ILR's interim acting executive director, who informed him that he was terminated effective immediately due to budget problems. Within days of Ross's termination, ILR modified its website to eliminate the names of all employees except for four managers.

Ross alleges that his termination was an act of retaliation for his prosecution of the Basketball Town lawsuit. He pursued administrative remedies on the federal and state level, filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission, a retaliation complaint with California's Department of Industrial Relations, and a written notice with California's Labor and Workforce Development Agency. Ross filed this lawsuit against ILR on February 8, 2008, asserting four claims under the Americans with Disabilities Act of 1990 ("ADA") and sections 1101 and 1102.5 of the California Labor Code, and for wrongful termination in violation of public policy. He added a fifth claim, for violation of California's Unruh Civil Rights Act, in a first amended complaint filed February 19, 2008.

---

[2] Ross has requested judicial notice of the First Amended Complaint filed on June 26, 2007, in Derrick Ross v. Sacramento Basketball Town, LLC et al. (U.S. District Court, Eastern District of California, Case No. 2:06-cv-02748 GEB). That request is GRANTED. The Court's description of the Basketball Town lawsuit is drawn from that complaint.

2

1    The matter was set for trial on November 17, 2009, without any dispositive motions having been made.  Five days before trial was to begin, the Court granted ILR's ex parte application to continue the trial date, based on a key witness's inability to appear due to illness.  The Court reset trial for August 24, 2010, and ordered that, "[t]o the extent that any claims can be resolved as a matter of law in advance of trial, the parties . . . raise such arguments in dispositive motions."  Order Setting Dates for Trial (Doc. 67) at 1.  Ross filed the SAC on January 27, 2010, which ILR moved to dismiss on February 16, 2010.

## LEGAL STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted."  In ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007).  Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949-50 (2009).

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

3

## DISCUSSION

ILR moves to dismiss all five causes of action in Ross's SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Each claim is addressed in turn.

### I.   First Claim: Retaliation in Violation of the ADA

Ross's first cause of action is for retaliation under section 503(a) of the ADA, which provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a). Ross contends that his termination came in retaliation for his pursuit of the Basketball Town lawsuit, and was therefore prohibited by section 503. ILR argues that Ross's ADA claim should be dismissed because he fails to properly allege that ILR is an "employer" subject to the ADA, which requires that it employ 15 or more people and be "engaged in an industry affecting commerce." 42 U.S.C. § 12111(5). Ross responds that he need not allege that ILR meets the statutory definition of employer because the ADA's anti-retaliation provision is not limited to "employers," but rather applies to all "persons."

The ADA prohibits discrimination in three areas: employment ("Title I"), public services ("Title II"), and public accommodations ("Title III"). Title I only bars discrimination by a "covered entity," 42 U.S.C. § 12112(a), meaning "an employer, employment agency, labor organization, or joint labor-management committee," *id.* § 12111(2). An "employer" under the ADA is a "person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." *Id.* § 12111(5).

Section 503, the anti-retaliation measure, appears among the "miscellaneous provisions" of Title V. Ross's argument hinges on section 503's statement that "[n]o *person* shall discriminate against any individual" for opposing acts made unlawful by the ADA. 42 U.S.C. § 12203(a) (emphasis added). The definition of "person" in the ADA is borrowed

4

from section 701 of the Civil Rights Act of 1964, *id.* § 12111(7), which provides that "person" includes individuals, governments, partnerships, associations, corporations, and unincorporated organizations, among others, *id.* § 2000e(a). Because section 503(a) is directed at any "person" rather than a "covered entity," Ross argues that the anti-retaliation provision applies much more broadly than Title I, and that a defendant need not meet the statute's definition of "employer."

Although Ross's argument is alluring, the structure of the ADA and case law point in the opposite direction. Section 503 has no remedies of its own, but rather directs an aggrieved party alleging unlawful retaliation to the remedial section of Title I, II, or III that corresponds to the conduct at issue. 42 U.S.C. § 12203(c) ("The remedies and procedures available under sections 107, 203, and 308 of this Act shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to title I, title II and title III, respectively."). Thus, a plaintiff who alleges – under section 503 – retaliation in the employment context would draw his remedy from Title I, which covers employment. Title I, in turn, provides that the "the powers, remedies, and procedures" available to a "person alleging discrimination on the basis of disability in violation of any provision of this Act" are those set forth in Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117(a). Title VII applies only to an "employer," *id.* § 2000e-2(a), which has materially the same definition as in Title I of the ADA, *id.* § 2000e(b). Therefore, while section 503 on its face applies to any "person," its remedies are drawn from provisions that apply only to "employer[s]" and other "covered entit[ies]."

Although the Ninth Circuit has never decided whether Title V of the ADA applies to all "persons," the issue has been addressed by a number of courts of appeal and district courts in this circuit. The majority have agreed that a "careful reading of the relevant provisions in light of the ADA's overall structure makes it clear that plaintiff cannot maintain an ADA retaliation claim against individual defendants who do not otherwise satisfy the definition of

5

an employer."[3] *Stern v. Cal. State Archives*, 982 F. Supp. 690, 692 (E.D. Cal. 1997); *see also Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999); *Hiler v. Brown*, 177 F.3d 542, 547 (6th Cir. 1999) (addressing question with respect to the "anti-retaliation provision of the Rehabilitation Act, which incorporates by reference § 12203(a) of the ADA"); *Kina v. United Air Lines, Inc.*, No. C08-4358 PJH, 2008 U.S. Dist. LEXIS 98948, at *22-23 (N.D. Cal. Dec. 1, 2008) (following *Stern*); *Van Hulle v. Pacific Telesis Corp.*, 124 F. Supp. 2d 642, 646 (N.D. Cal. 2000) (concluding "that a plaintiff cannot maintain an ADA retaliation claim against entities which are not otherwise subject to Subchapters I, II, and III of the ADA"); *Brenneise v. San Diego Unified Sch. Dist.*, No. 08cv28-MMA(WMc), 2009 U.S. Dist. LEXIS 39608, at *24 (S.D. Cal. May 8, 2009) ("Almost all [district and circuit courts to address the issue] have found that individuals are not liable under the retaliation provisions of the ADA."). These decisions, while acknowledging that section 503 applies on its face to any "person," put more weight on the statute's remedial structure. As the Fourth Circuit explained, "Because Title VII does not authorize a remedy against individuals for violation of its provisions, and because Congress has made the remedies available in Title VII applicable to ADA actions, the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA." *Baird*, 192 F.3d at 472.

The primary decision to the contrary, *Ostrach v. Regents of the University of California*, relied on the plain meaning of "person" to conclude that a plaintiff may sue "individual defendants under the anti-retaliation provision of the ADA." 957 F. Supp. 196, 200 (E.D. Cal. 1997); *see also Tater-Alexander v. Amerjan*, No. 1:08-cv-00372-OWW-SMS, 2008 U.S. Dist. LEXIS 91273, at *26-27 (E.D. Cal. Apr. 4, 2008) (following *Ostrach*); *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 (11th Cir. 2003) (holding that "an individual may be sued privately in his or her personal capacity for violating § 12203 in the public services context"). However, this Court sides with the weight of authority in concluding that only covered entities for Title I purposes may be liable for employment-based retaliation claims

---

[3] Although ILR is not an individual defendant but a corporation, the question posed here is identical: whether a defendant has to meet that ADA's definition of "employer" for liability to attach.

6

1 under section 503(a). To decide otherwise would produce the incongruous result that
2 employment retaliation claims could be brought against virtually any defendant, while all
3 other employment-based ADA claims – from which the retaliation remedies are drawn –
4 could be asserted only against employers and other covered entities.

5 The question remains whether Ross has adequately pled that ILR was an employer
6 subject to the ADA – in particular, that ILR employs at least 15 people and engages in an
7 "industry affecting commerce." The SAC characterizes ILR as "a California corporation that
8 provides counseling services," which "maintains its principal place of business in Contra
9 Costa County, at 3200 Clayton Road, Concord, California." SAC ¶ 4. Attached to the SAC
10 is the charge of discrimination that Ross filed with the EEOC, which lists the "number of
11 employees" as "[m]ore than 15." *Id.* Ex. A. Since a "copy of a written instrument that is an
12 exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), the SAC
13 properly alleges that ILR employs at least 15 people.

14 However, the SAC's cursory description of ILR offers little basis for determining that
15 it engages in an industry affecting commerce. In the definitions provided in Title I of the
16 ADA, 42 U.S.C. § 12111(7), "commerce" and "industry affecting commerce" are defined as
17 they appear in section 701 of the Civil Rights Act of 1964:

> The term "commerce" means trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof.
>
> The term "industry affecting commerce" means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry "affecting commerce" within the meaning of the Labor-Management Reporting and Disclosure Act of 1959, and further includes any governmental industry, business, or activity.

26 42 U.S.C. § 2000e(g), (h). "When Congress uses the term 'activity affecting commerce,' it is
27 an expression of Congress' intent to regulate 'within the full sweep of its constitutional
28 authority'" under the Commerce Clause. *Winterrowd v. David Freedman & Co.*, 724 F.2d

7

823, 825 (9th Cir. 1984) (quoting *Polish Nat'l Alliance v. NLRB*, 322 U.S. 643, 647 (1944)). The Supreme Court has offered an "expansive interpretation of what constitutes 'industry affecting commerce.'" *EEOC v. Ratliff*, 906 F.2d 1314, 1316 (9th Cir. 1990). "The 'affects commerce' requirement is satisfied" where, for example, a defendant "uses items that have moved through interstate commerce at some point in their lives," or "serves persons from out of state." *Id.*

In his opposition to ILR's motion, Ross failed to address the argument that the SAC should be dismissed for failing to allege that ILR engages in an "industry affecting commerce." At hearing, Ross's counsel acknowledged that the SAC does not allege any facts demonstrating that this requirement is satisfied, but stated that he could do so in an amended complaint. *See, e.g.*, *Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1004 (7th Cir. 2003) (finding that non-profit that "performs extensive counseling services" satisfies the commerce requirement based on out-of-state job applications, financial support, and telephone service, among others). Although the "'affects commerce' jurisdictional obstacle is very low indeed," *Ratliff*, 906 F.2d at 1316, it is nonetheless an obstacle that must be overcome. The first cause of action is therefore DISMISSED WITHOUT PREJUDICE to its amendment to plead facts establishing that ILR was Ross's employer as defined in the ADA.

## II. Second Claim: California Labor Code Section 1101

Section 1101 of the California Labor Code provides that "[n]o employer shall make, adopt, or enforce any rule, regulation, or policy . . . [c]ontrolling or directing, or tending to control or direct the political activities or affiliations of employees." Cal. Lab. Code § 1101(b). Ross alleges in his second cause of action that ILR violated section 1101 by terminating his employment based on his prosecution of the Basketball Town lawsuit, which he characterizes as political activity. ILR argues that this claim should be dismissed because a section 1101 violation can only be prosecuted as a breach of contract claim, and Ross fails to plead the elements of breach of contract. Defendant also contends that Plaintiff's pursuit

of the Basketball Town lawsuit does not constitute political activity and therefore falls outside the ambit of section 1101's protections.

The California Supreme Court has clearly held that "an employee who has been discriminated against in violation of sections 1101 or 1102 may maintain a cause of action against his employer to recover damages sustained as a result of the employer's unlawful conduct." *Gay Law Students Ass'n v. Pac. Tel. & Tel. Co.*, 24 Cal. 3d 458, 488-89 (1979) (citing *Lockheed Aircraft Corp. v. Superior Court*, 28 Cal.2d 481 (1946)). Although *Lockheed* characterized the "right of action" as one "for damages for breach of his employment contract," 28 Cal. 2d at 486, the California Supreme Court's more recent statement in *Gay Law Students* described the cause of action as one "to recover damages sustained as a result of the employer's unlawful conduct." It is not necessary for Ross to plead the elements of breach of contract in order to bring a section 1101 claim. Ross need only plead that he is entitled to damages "as a result of [his] employer's unlawful conduct" under section 1101, *Gay Law Students*, 24 Cal. 3d at 488-89, which he has done.

ILR's principal argument is that Ross's Basketball Town lawsuit was not political, and that section 1101 is therefore inapplicable. Section 1101 was enacted "to protect 'the fundamental right of employees in general to engage in political activity without interference by employers.'" *Gay Law Students*, 24 Cal. 3d at 487 (quoting *Fort v. Civil Serv. Comm'n*, 61 Cal. 2d 331, 335 (1964)). The California Supreme Court has cautioned that the statute "cannot be narrowly confined to partisan activity," as the "term 'political activity'" is much broader, connoting "the espousal of a candidate *or a cause*, and some degree of action to promote the acceptance thereof by other persons." *Id.* (emphasis in original) (internal citation omitted). "[P]articipation in litigation" is among the activities whose political character has been recognized by the Supreme Court. *Id.* (citing *NAACP v. Button*, 371 U.S. 415, 429 (1963)).

Relying on that framework, ILR contends that Ross's lawsuit cannot be deemed political in character because he "was invoking an existing statutory right won through the political efforts of others." Mot. to Dismiss (Doc. 74) at 8. ILR contrasts the Basketball

9

Town lawsuit against the racial equality litigation pursued by the NAACP, which the Supreme Court characterized as "not a technique of resolving private differences," but rather "a means for achieving the lawful objectives of equality of treatment by all government, federal, state and local, for the members of the Negro community in this country." *Button*, 371 U.S. at 429. Litigation in that context "is thus a form of political expression. Groups which find themselves unable to achieve their objectives through the ballot frequently turn to the courts." *Id.* ILR insists that Ross's lawsuit does not fit within that mold. Since Ross "did not plow new political ground," Mot. to Dismiss at 9, ILR argues that his lawsuit cannot be political.

The Court disagrees. Winning the right to bring a claim is only one step forward in a political campaign to achieve equality; the existence of a right is meaningless if never exercised. The right to equal access to public accommodations enshrined in the ADA holds little value if it is not upheld and enforced. It is certainly plausible that the exercise of Ross's right to bring an ADA claim was itself a political act, espousing the cause of equal access for individuals with disabilities, and promoting "the acceptance thereof by other persons." *Gay Law Students*, 24 Cal. 3d at 487. Litigation need not be trail-blazing to be political. Whether or not this particular lawsuit was political need not be answered at this stage. Ross need only have stated a plausible claim for relief, and he has done so by alleging that political motives fueled his pursuit of the Basketball Town lawsuit.

ILR further argues that Ross has failed to identify a "rule, regulation, or policy" that limited Ross's political activities. It is unnecessary at this stage for Ross to do so. The allegation that Ross was terminated as a result of his political activity is sufficient to plausibly suggest the existence of such a policy. The motion is therefore DENIED as to Ross's second claim.

**III.    Third Claim: California Labor Code Section 1102.5**

In his third claim, Ross alleges that ILR violated section 1102.5 of the California Labor Code, which bars an employer from retaliating "against an employee for disclosing

10

1  information to a government or law enforcement agency, where the employee has reasonable
2  cause to believe that the information discloses a violation of state or federal statute, or a
3  violation or noncompliance with a state or federal rule or regulation." Cal. Lab. Code
4  § 1102.5(b). ILR argues that section 1102.5(b) is an employee whistleblower statute
5  designed only to protect employees who disclose information about their employers. Since
6  Ross's Basketball Town lawsuit alleged an ADA violation by an entity that never employed
7  him, ILR contends that Ross fails to state a claim. Ross responds that the conduct protected
8  by section 1102.5(b) is broader than that, as the language of the statute "does not require the
9  subject matter of the complaint to refer to either current or former employment." Opp'n
10  (Doc. 77) at 7.

11  Ross is correct that section 1102.5 does not explicitly require that the information
12  disclosed be related to an employer. However, the conclusion that the statute applies only to
13  disclosures derived from the employer-employee relationship is inescapable when section
14  1102.5 is placed in context. Although the words of a statute must be given "their ordinary
15  meaning," those words must also "be read in context, considering the nature and purpose of
16  the statutory enactment." *Torres v. Auto. Club of So. Cal.*, 15 Cal. 4th 771, 777 (1997).
17  Section 1102.5(b) "reflects the broad public policy interest in encouraging workplace
18  'whistleblowers,' who may without fear of retaliation report concerns regarding an
19  employer's illegal conduct." *Collier v. Superior Court*, 228 Cal. App. 3d 1117, 1123 (1991);
20  *see also Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 76-77 (1998). When the California
21  Legislature amended section 1102.5 in 2003, it laid out the rationale for the legislation in a
22  preamble: "It is the public policy of the State of California to encourage employees to notify
23  an appropriate government or law enforcement agency when they have reason to believe
24  *their employer* is violating laws enacted for the protection of corporate shareholders,
25  investors, employees, and the general public." SB 777, § 1, 2003 Cal. Adv. Legis. Serv. 484
26  (Deering) (emphasis added). The legislative findings observed that damages resulting from
27  "unlawful activities of private corporations . . . may be prevented by the early detection of
28  corporate wrongdoing," and that employees "are in a unique position to report corporate

11

wrongdoing to an appropriate government or law enforcement agency." *Id.* Further, the amendment characterizes section 1102.5 as pertaining to "whistleblowers," defined by Black's Law Dictionary as "employee[s] who report[] employer wrongdoing to a governmental or law-enforcement agency." Black's Law Dictionary 1627 (8th ed. 1999). Such legislative findings, although uncodified, "properly may be utilized as an aid in construing a statute." *Carter v. Cal. Dep't of Veterans Affairs*, 38 Cal. 4th 914, 925 (2006).

Ross's allegations do not fit within that framework. His original lawsuit alleged that the facilities at Basketball Town violated the ADA due to their physical inaccessibility to individuals with disabilities. Not an employee of Basketball Town, he was in no "unique position" to uncover the alleged ADA violation; rather, he observed the deficiency as a member of the public visiting the premises. Protecting whistleblowers is the purpose recognized in the legislative findings and case law – but Ross is not a "whistleblower." Although the language of section 1102.5(b) does not expressly limit its application to information disclosed *about* an employer, that is the only reasonable interpretation. Ross can point to no cases that have endorsed his reading, and the Court has identified none.

Section 1102.5(b) only protects an employee against an employer's retaliation for whistleblowing activity, which requires that the disclosed information be related to or acquired in the employment context. Since Ross's section 1102.5(b) claim is premised on a disclosure about an entity that never employed him, he fails to state a claim upon which relief can be granted. The third cause of action is therefore DISMISSED.

**IV.    Fourth Claim: Wrongful Termination in Violation of Public Policy**

Ross's fourth claim, for wrongful termination in violation of public policy, is premised on the statutory violations alleged in the first three claims. California law allows a discharged employee to "maintain a tort action and recover damages traditionally available in such actions" when an employer's discharge of that employee "violates fundamental principles of public policy." *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 170 (1980). Ross asserts that his termination violated the fundamental public policies articulated in the

ADA and sections 1101 and 1102.5 of the California Labor Code.  ILR, having argued that the three statutory causes of action underlying this claim are infirm, contends that the wrongful termination claim must fail for the same reasons.  Defendant further asserts that the ADA claim cannot underlie a wrongful discharge cause of action because federal and state public policy are not coextensive on that issue.

The California Supreme Court has "articulated a four-part test for determining whether a particular policy can support a common law wrongful discharge claim." *City of Moorpark v. Superior Court*, 18 Cal. 4th 1143, 1159 (1998).  The policy "must be: (1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." *Stevenson v. Superior Court*, 16 Cal. 4th 880, 894 (1997).  Since the Court has already concluded that Ross cannot maintain a whistleblower action under section 1102.5, that provision cannot underlie a wrongful discharge claim.  However, both section 503 of the ADA and section 1101 of the California Labor Code satisfy the *Stevenson* test.  They are (1) statutory provisions that (2) inure to the public by protecting anyone who enforces the rights of the disabled or engages in political activity.  Both statutes were (3) well established at the time of Ross's discharge in 2007 (the ADA was passed in 1990; section 1101 in 1937), and the policies they advance are (4) substantial and fundamental.

ILR argues that the ADA cannot support a wrongful discharge tort under California law, because it constitutes a federal policy with no equivalent at the state level.  However, a wrongful discharge claim can be based on state or federal law.  Tortious discharge evolved as an exception to the principle of "at will" employment – which allows either party to terminate the employer-employee relationship without cause – in response to employers who abused the at-will relationship "by discharging employees for reasons contrary to public policy as expressed in statutory or constitutional mandates." *Stevenson*, 16 Cal. 4th at 887.  In refining the framework of the tortious discharge claim, the California Supreme Court concluded that grounding the tort "in either constitutional or statutory provisions . . . strikes

1  the proper balance among the interests of employers, employees and the public," as the
2  "employer is bound, at a minimum, to know the fundamental public policies of the *state and*
3  *nation* as expressed in their constitutions and statutes." *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083,
4  1095 (1992) (emphasis added). The California Supreme Court's own description of the
5  purpose and function of the wrongful discharge tort demonstrates that state or federal law
6  may undergird such a claim. An alleged violation of the ADA can therefore support Ross's
7  fourth cause of action.

8        The wrongful discharge cause of action survives dismissal on the basis of the section
9  1101 claim and – if Ross amends his complaint to satisfy the ADA's commerce clause
10 provision – his ADA section 503 claim. The motion is therefore DENIED as to Ross's
11 fourth claim.

13 **V.   Fifth Claim: Unruh Civil Rights Act**
14       Ross's fifth and final claim is for violation of California's Unruh Civil Rights Act,
15 which provides that "[a]ll persons within the jurisdiction of this state are free and equal, and
16 no matter what their sex, race, color, religion, ancestry, national origin, disability, medical
17 condition, marital status, or sexual orientation are entitled to the full and equal
18 accommodations, advantages, facilities, privileges, or services in all business establishments
19 of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act, as amended in 1992,
20 makes a "violation of the right of any individual" under the ADA "a violation of this
21 section." *Id.* § 51(f). Ross premises his Unruh Act claim on the retaliation alleged in his first
22 cause of action under the ADA.

23       The Unruh Act is "focus[ed] on ensuring that persons with disabilities have equal
24 access to public businesses, facilities, and other accommodations," *Bass v. County of Butte*,
25 458 F.3d 978, 980 (9th Cir. 2006), and "has no application to employment discrimination,"
26 *Rojo v. Kliger*, 52 Cal. 3d 65, 77 (1990). California's prohibition on employment
27 discrimination, including that based on disability, appears in the Fair Employment and
28 Housing Act, Cal. Gov't Code §§ 12900 *et seq.* ILR argues that Ross cannot state a claim

14

under the Unruh Act, since it addresses only public accommodations and not employment discrimination. Indeed, the Ninth Circuit has concluded that section 51(f) does not incorporate "the ADA *in its entirety* into the Unruh Act," because doing so would have "transform[ed] the subject-matter scope of the[] statute[], drastically broadening [its] reach from public accommodations to employment discrimination." *Bass*, 458 F.3d at 981 (emphasis in original). The court therefore held that violations of the ADA's employment provisions are not violations of the Unruh Act. *Id.* at 982-83.

Ross contends that his claim should be construed as arising out of Title III of the ADA – which deals with public accommodations and is incorporated into the Unruh Act – since he alleges retaliation based on his public accommodations lawsuit against Basketball Town. However, the act of which Ross complains – termination of employment – is an act of employment discrimination. Since the Unruh Act does not recognize employment claims under the ADA, Ross's fifth cause of action must be DISMISSED.

**CONCLUSION**

The motion is GRANTED IN PART and DENIED IN PART. Ross's third cause of action under California Labor Code section 1102.5, and his fifth cause of action for violation of the Unruh Act, are DISMISSED WITH PREJUDICE. His second and fourth claims, for violation of California Labor Code section 1101 and wrongful discharge, survive. The first claim, under ADA section 503, is DISMISSED WITHOUT PREJUDICE to the filing of an amended complaint alleging facts that show ILR is engaged in an industry affecting commerce. The amended complaint shall be filed no later than **Monday, April 12, 2010**.

**IT IS SO ORDERED.**

Dated: 4/1/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

15