IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DERRICK ROSS,

          Plaintiff,

    v.

INDEPENDENT LIVING RESOURCE OF CONTRA COSTA COUNTY,

          Defendant.

NO. C08-00854 TEH

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      This matter came before the court on July 19, 2010, on the motion for summary judgment filed by Defendant Independent Living Resource of Contra Costa County ("ILR"). For the reasons set forth below, ILR's motion is GRANTED IN PART and DENIED IN PART.

**FACTUAL BACKGROUND**

      Plaintiff Derrick Ross ("Ross") was hired in May 2007 to work as a transition services coordinator in the Fairfield office of ILR, a California corporation that provides counseling services, education, and housing assistance for individuals with disabilities. He was terminated on October 3, 2007, by ILR's acting executive director, Eli Gelardin, purportedly for budgetary reasons. Only days earlier, ILR had received a barrage of negative emails following media reports that a local recreational facility was closing in response to an Americans with Disabilities Act ("ADA") accessibility lawsuit brought by Ross. In a Third Amended Complaint ("TAC") filed on April 6, 2010, Ross alleges that he was terminated in response to the lawsuit, in violation of the anti-retaliation provision of the ADA. He also alleges that his termination was contrary to section 1101 of the California Labor Code, which

bars employers from enforcing a policy that controls the political activities of its employees, and that he suffered a wrongful termination in violation of public policy. ILR moved for summary judgment on May 24, 2010; Ross opposed the motion. The factual backdrop to the motion is as follows.

On November 17, 2006, six months before his employment at ILR began, Ross filed a lawsuit in federal court against Sacramento Basketball Town, LLC ("Basketball Town"), a sports facility in Rancho Cordova, California, for the denial of accessible facilities to him and other disabled patrons. Ross, who is quadriplegic and requires the use of a wheelchair, brought that action after he was unable to accompany his nephew and wife to a birthday party held on Basketball Town's mezzanine level, which was accessible only by stairs. He sought damages and an injunction directing Basketball Town to modify its facilities to provide equal access to individuals with disabilities.

Ross began working with ILR as a volunteer, and was hired for a paid position starting May 14, 2007. As a transition services coordinator, Ross obtained certification to provide Social Security benefits counseling to ILR clients under the federal Work Incentives Planning and Assistance program. His immediate supervisor, Susan Rotchy, thought he "had great potential." Rotchy Depo. at 44:7-8.

On June 18, 2007, Gelardin was hired as ILR's deputy director for independent living. ILR's executive director at the time was Brian Balch, who – over the course of that summer – gradually acknowledged serious budget issues plaguing the agency. Balch told Gelardin in July that the state Legislature's budget impasse and a delay in federal funding from the U.S. Department of Rehabilitation could affect ILR's budget; however, those issues never appeared in a draft financial statement Balch submitted to ILR's board of directors at a July 26, 2007 meeting. The following month, Balch revealed that ILR was facing a budget shortfall of $72,000. Balch was terminated for mismanagement of the company on September 7, 2007, and Gelardin became ILR's acting executive director on September 10.

Upon taking over the reins of the agency, Gelardin discovered that the deficit he had inherited was far greater than what Balch had projected. Gelardin concluded, after reviewing

2

1  data from Balch's computer, that the shortfall could reach as high as $140,000. Balch had
2  intended to fill the gap with fundraising proceeds that Gelardin thought "were unlikely to
3  materialize." Gelardin Decl. ¶ 9. According to Gelardin, the board of directors held an
4  emergency meeting on September 10, in which it discussed ILR's dire financial situation and
5  agreed that immediate layoffs were necessary to reduce expenses. Ross questions whether
6  such a meeting occurred, however: no minutes for that meeting have been produced, board
7  president Susan Armstrong did not recall the meeting, and Gelardin did not need board
8  approval before conducting layoffs.
9      It is undisputed that, in addition to Balch, three other employees were laid off between
10 September 7 and 20. Ross believed his job to be safe, however. He testified in deposition
11 that Gelardin had assured him, during a staff meeting in September, that "everyone's job is
12 secure. Your job is secure." Ross Depo. at 125:16-18.[1]
13     At a board of directors meeting held on September 27, 2007, ILR employee Helen
14 Omictin gave a report on the financial status of the agency. Although a budget with
15 $140,000 of general funds had been projected as of June 30, 2007, the agency was scheduled
16 to receive only $32,371.31 in general funds, a shortfall of nearly $108,000. Omictin
17 projected that the agency would save nearly that amount – $106,000 – with deductions and
18 layoffs already undertaken in the previous month.
19     Two days later, on September 29, 2007, Basketball Town announced publicly that it
20 would be closing due to the expenses associated with defending against Ross's lawsuit and
21 making the necessary improvements to their facility. The closure received considerable
22 attention in the local media – including newspapers, television, and the Internet – and

---

[1] ILR objects that Ross's own deposition testimony is inadmissible in this context, "as the deponent is the party offering the deposition." Def.'s Objs. to Pl.'s Evidence (Doc. 100) at 1 (citing Fed. R. Civ. P. 32). ILR's objection is unfounded. Evidence offered in "party's own sworn deposition testimony and declaration in opposition to the motion for summary judgment" may be sufficient to generate a genuine issue of material fact and therefore warrant denial of the motion. *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1461 (9th Cir. 1985). Rule 56 clearly allows the Court to rely on "discovery . . . materials" and "affidavits" in ruling on summary judgment. Fed. R. Civ. P. 56(c)(2). ILR's remaining evidentiary objections are denied as moot, as the Court did not rely on the evidence to which the objections were lodged.

3

sparked angry responses. The ILR website listed Ross as an employee at that time, and his affiliation with ILR was discovered and posted on an Internet forum that encouraged people to email ILR regarding Ross's participation in the lawsuit.

At the same time, Heather Agdeppa, the ILR employee responsible for checking the "info" email address posted on the agency's website, received a number of emails she characterized as "hate mail" listing Ross's name in the subject line. Agdeppa Depo. at 9:22-24. She read a sampling of the emails, which complained about Ross's lawsuit against Basketball Town; although similar messages arrived over the course of several days, Agdeppa only read the first few. After confirming on the Internet that the Derrick Ross described in the emails was the same person employed by ILR, she shared the emails with Gelardin, who ran his own online searches and learned – according to Agdeppa – that Ross had filed other ADA lawsuits, as well. Gelardin acknowledged reading at least one of those email messages, which he characterized as exhibiting "frustration about the lawsuit" brought by Ross. Gelardin Depo. at 98:2-13. Gelardin was "surprised" and "even upset" by the email and the "bad publicity" that resulted from Basketball Town's closure. *Id.* at 85:2-86:8. Ross's lawsuit represented "just another issue that . . . stressed out an already frail agency." *Id.* at 86:2-5

Gelardin discussed the publicity generated by the lawsuit with other colleagues. Dan Clark, a resource specialist with the U.S. Department of Rehabilitation who worked closely with ILR, recalled that he and Gelardin briefly discussed a story in the Sacramento Bee about the Basketball Town lawsuit. Gelardin acknowledged having seen the article and recognized the publicity from the lawsuit as something that could affect ILR. However, Gelardin did not indicate to Clark whether or not he supported the lawsuit. Gelardin also asked Susan Rotchy whether she had heard any of the publicity surrounding the Basketball Town lawsuit. That same day, Gelardin told Rotchy that ILR was "just barely staying afloat." Rotchy Depo. at 42:21-43:1.

On October 3, 2007, Rotchy was attending an event out of the office when she received a call from Gelardin asking her to meet him at the Fairfield office because he "had

4

1  to make a management decision, and [Rotchy] needed to be there." *Id.* at 42:3-4. She met
2  privately with Gelardin upon returning to the office, at which time he told her that "he would
3  be letting Derrick go." *Id.* at 43:16-19. According to Rotchy, Gelardin knew that she "was
4  pretty upset," because she "really believe[d] that Derrick had great potential"; however, she
5  also realized that Ross "was the last one hired." *Id.* at 43:24-44:13. Ross was called into the
6  meeting around noon, at which time Gelardin informed him that he would be terminated
7  effective immediately due to budget problems.

8        Before terminating Ross, Gelardin instructed Agdeppa to cut his check and
9  acknowledged, when she asked, that Ross was being let go. Agdeppa recalls that Gelardin
10 told her both that "there was just no way that we could have somebody employed that[]
11 makes the organization look bad," and also that he was terminated "due to budget cuts."
12 Agdeppa Depo. at 16:23-17:21. She understood that "nobody else was to know . . . the
13 Basketball Town issues and the other lawsuit stuff." *Id.*

14       Ross's employee termination report attributes his job loss to "current fiscal
15 constraints" and characterizes it as a "company layoff." Ross was one of four employees in
16 the Fairfield office, a satellite to the main ILR office in Concord, California. According to
17 Gelardin, Ross was laid off because the other three Fairfield employees – including the office
18 administrator and Rotchy, his supervisor – were more essential and carried job duties that
19 Ross could not assume.

20       At his deposition, Gelardin could not identify anyone else who knew of his plans to
21 terminate Ross prior to October 3, 2007. Armstrong, the president of ILR's board of
22 directors, did not recall ever having been told who would be laid off, or when. Gelardin did
23 not need the approval of ILR's board to make personnel decisions, including layoffs.

24       Four members of ILR's management team – including Rotchy – received significant
25 raises effective October 1, 2007, two days prior to Ross's termination. Gelardin explained
26 that he gave the raises in light of the fact that "people were jumping ship," and he needed "to
27 have a core team restructured" to be able to address the agency's problems. Gelardin Depo.
28 at 126:5-9. Between Ross's last day of work and the end of 2007, ILR hired four new

5

employees. With weeks of Ross's departure, ILR also laid off Agdeppa, who worked out of the Fairfield office; two other Fairfield employees were laid off in early 2008, after being told that ILR did not have the funds to pay their salaries. Rotchy, the last employee in the Fairfield office, was given the option of moving to the main office in Concord or leaving the agency; she chose to leave ILR.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255. The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the opposing party must then "set out specific facts showing a genuine issue for trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256.

6

**DISCUSSION**

ILR seeks summary judgment on all three claims in Ross's TAC: (1) retaliation under the ADA, (2) violation of California Labor Code section 1101, and (3) wrongful termination. ILR also asks the Court to conclude that attorneys' fees are unavailable under the second and third causes of action.

**I.   ADA Retaliation Claim**

Ross brings his first cause of action under section 503(a) of the ADA, which proscribes retaliation against any individual for exercising rights protected by the statute:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act.

42 U.S.C. § 12203(a). Ross claims he was terminated because of the negative publicity that threatened ILR once Basketball Town had announced its closure, which constitutes discrimination based on his opposition to "an act or practice made unlawful by" the ADA. ILR responds that the lawsuit played no role in the decision to terminate Ross, which was based exclusively on the need to reduce staff to bridge the agency's budget gap.

In assessing retaliation claims under the ADA, courts "have almost uniformly adopted the burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)." *Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003). That framework, which was "developed to assess claims brought under . . . Title VII of the Civil Rights Act of 1964," *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000), requires a plaintiff to "make out a prima facie case by showing '(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two,'" *Brown*, 336 F.3d at 1187 (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)). Once a prima facie case is established, the burden of production shifts to the employer to "'present legitimate reasons for the adverse employment action.'" *Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d 879, 887

7

1 (9th Cir. 2004) (quoting *Brooks*, 229 F.3d at 928). "If the employer carries this burden, and plaintiff demonstrates a genuine issue of material fact as to whether the reason advanced by the employer was a pretext, then the retaliation case proceeds beyond the summary judgment stage." *Id.*

The *McDonnell Douglas* test is designed to assure a plaintiff has "his day in court despite the unavailability of direct evidence." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). It is applied in cases of pretext, where the plaintiff alleges the defendant has supplied a false, *pretextual* reason for the employment decision, and "discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). "In pretext cases, 'the issue is whether either illegal or legal motives, but not both, were the 'true' motives behind the decision.'" *Price Waterhouse v. Hopkins*, 490 U.S. 228, 260 (1989) (White, J., concurring in the judgment) (quoting *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 400, n.5 (1983)). However, ILR characterizes Ross's action as asserting a "mixed-motive theory of causation," under which "both legitimate and illegitimate reasons motivated the [adverse employment] decision." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93 (2003). In mixed-motive cases, "there is no one 'true' motive behind the decision. Instead, the decision is a result of multiple factors, at least one of which is legitimate." *Price Waterhouse*, 490 U.S. at 260 (White, J., concurring in the judgment).

The standard to apply for a mixed-motive case under the ADA is uncertain. The Ninth Circuit has "adopt[ed] the Title VII retaliation framework for ADA retaliation claims." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) (en banc), vacated on other grounds, 535 U.S. 391 (2002). Historically, courts have assessed mixed-motive cases under Title VII using the framework established in *Price Waterhouse v. Hopkins*, as endorsed by a four-justice plurality as well as two justices concurring in the judgment. A plaintiff's initial burden under *Price Waterhouse* is to show that discrimination was a "motivating" or "substantial" factor in the employer's action, after which the burden of *persuasion* shifts to the employer, who escapes liability only by demonstrating that it would have reached the same decision even in the absence of the impermissible consideration. *Price Waterhouse*,

8

490 U.S. at 244-45 (plurality opinion); *id.* at 259 (White, J., concurring in the judgment); *id.* at 276 (O'Connor, J., concurring in the judgment). The Court explained that it was not "shifting burdens" as much as establishing an "affirmative defense: the plaintiff must persuade the fact finder on one point, and then the employer, if it wishes to prevail, must persuade it on another." *Id.* at 246. *Price Waterhouse* was a Title VII gender discrimination case; in the wake of that decision, Congress passed the Civil Rights Act of 1991, which amended Title VII to explicitly authorize "discrimination claims in which an improper consideration was 'a motivating factor' for an adverse employment decision." *Gross v. FBL Financial Services, Inc.*, -- U.S. ----, 129 S. Ct. 2343, 2349 (2009); *see* 42 U.S.C. § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice, even though other factors also motivated the practice.").[2]

The Supreme Court has "frequently applied its interpretations of Title VII to" another anti-discrimination statute, the Age Discrimination in Employment Act ("ADEA"). *Gross*, 129 S. Ct. at 2349 n.2. In *Gross*, however, the Supreme Court concluded that the *Price Waterhouse* framework is *inapplicable* to claims under the ADEA, *id.* at 2350, 2352, a ruling that could be read to apply with equal force to the ADA. "Unlike Title VII," the Court observed, "the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Id.* at 2349. The Court concluded that the text of the ADEA – which bars an employer from discriminating against any individual "because of such individual's age," 29 U.S.C. § 623(a)(1) – does not authorize a mixed-motive age discrimination claim. 129 S. Ct. at 2350. Relying on the definition of "because of" – which means "by reason of" – the Court concluded that age had to be "the 'reason' that the employer decided to act." *Id.* The Court therefore held that "a plaintiff

---

[2] The 1991 Act also affirmed *Price Waterhouse*'s holding that the employer maintains the burden of persuasion on the affirmative mixed-motive defense. *See* 42 U.S.C. § 2000e-5(g)(2)(B) (requiring employer to "demonstrate" that it "would have taken the same action in the absence of the impermissible motivating factor"). However, the employer cannot avoid all liability by proving it would have made the same decision; under the 1991 Act, such proof only allows the employer to escape monetary damages and a reinstatement order. *Id.* § 2000e-5(g)(2)(B)(ii).

bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action," and that the "burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Id.* at 2352.

Although *Gross* interpreted the ADEA, ILR urges the Court to apply it here and extend its reasoning to the ADA. The argument for doing so is compelling. The anti-retaliation provision of the ADA, like the ADEA, bars discrimination "because" an individual engaged in a protected activity, 42 U.S.C. § 12203(a) – language that weighed heavily in the Supreme Court's reasoning. The Court was also swayed by the fact that the 1991 amendments adding the "motivating factor" language to Title VII were not accompanied by similar changes to the ADEA, "even though [Congress] contemporaneously amended the ADEA in several ways." 129 S. Ct. at 2349. Congress likewise failed to amend the ADA in that manner. Finally, although the Ninth Circuit has not addressed Gross's applicability to the ADA, the Seventh Circuit has done so – applying *Gross*'s reasoning to conclude that "mixed-motive claims . . . do not entitle a plaintiff to relief" under the ADA. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957 (7th Cir. 2010). This Court therefore concludes that the standard enunciated in *Gross* – requiring a plaintiff to prove "but-for" causation in a mixed-motive case under the ADEA in lieu of the *Price Waterhouse* framework – must also apply to the ADA.

The question remains, however, whether the Court should analyze Ross's claim using the *McDonnell Douglas* framework for pretext cases, or the approach enunciated under *Gross* for mixed motives. The reason articulated for Ross's termination – budget cuts – could be regarded as a pretext for his retaliatory discharge, but it could also have been one factor in a decision that also included legitimate considerations. Only after "all the evidence has been received" does a court determine which "framework properly applies to the evidence before it." *Price Waterhouse*, 490 U.S. at 278 (O'Connor, J., concurring in the judgment). This Court need not and will not choose between the two frameworks, however.

10

1  Ross retains the ultimate burden of proof under either standard, and has presented sufficient
2  evidence to have his retaliation claim heard by the jury.

3  If ILR's explanation for Ross's termination is regarded as pretext, the Court engages
4  in the burden-shifting of *McDonnell Douglas*. To establish a prima facie case, Ross must
5  and does show that he engaged in a protected activity – bringing the Basketball Town lawsuit
6  under the ADA – and that he suffered an adverse employment action, termination. The third
7  and more difficult component of the prima facie case is a causal link between the two.

8  As a preliminary matter, the brief lapse of time between when news first broke of
9  Ross's role in the lawsuit – Saturday, September 29, 2007 – and his termination on
10 Wednesday, October 3, offers circumstantial evidence of causation. Gelardin, who made the
11 decision to terminate Ross, acknowledged learning about the lawsuit from the emails sent to
12 ILR's general inbox. "Temporal proximity between protected activity and an adverse
13 employment action can by itself constitute sufficient circumstantial evidence of retaliation in
14 some cases." *Bell v. Clackamas County*, 341 F.3d 858, 866 (9th Cir. 2003) (finding "strong
15 circumstantial evidence of retaliation" based on supervisors' "contemporaneous displeasure"
16 with plaintiff's protected activity, and temporal proximity between protected activity and
17 "alleged adverse employment actions"). The temporal proximity "between an employer's
18 knowledge of protected activity and an adverse employment action . . . must be 'very close'"
19 in order to establish a prima facie case. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268,
20 273 (2001) (internal citation omitted). Here, five days – only three of which were work days
21 – lapsed between news of Basketball Town's closure and Ross's termination, a time period
22 that is sufficiently short to suggest a causal link.

23 The evidence of causation goes well beyond timing alone. Gelardin acknowledges
24 that he was distressed by the news of Ross's involvement in the lawsuit, and at least three
25 people – Rotchy, Agdeppa, and Clark – recalled that Gelardin broached the issue with them.
26 Agdeppa also testified that, when Gelardin instructed her to cut Ross's final check, he
27 suggested that the true reason for Ross's termination was the fallout from the Basketball
28 Town case. Finally, the urgency with which Gelardin communicated Ross's termination –

11

requiring Rotchy to immediately return to the office – is inconsistent with a decision based, as Gelardin insists, on budget issues that he had been addressing over the prior month.

Ross therefore satisfies his initial burden, and the burden of production shifts to ILR to show a legitimate reason for the adverse employment action. ILR does so: the budget problems that plagued the agency at that time are well-documented,[3] and the layoffs that Gelardin had initiated in September continued through the following year. The remaining employees in the Fairfield office were laid off within weeks or months of Ross's termination, and Gelardin provided a plausible explanation as to why Ross was the first of those employees to go.

The burden therefore shifts back to Ross, who seeks to satisfy his ultimate burden of persuasion by offering evidence rebutting Gelardin's assertion that he was laid off for budgetary reasons. Only one week before Ross's termination, a presentation at the board of directors' meeting suggested that the budget shortfall had already been filled through layoffs and other cutbacks. Before news of the Basketball Town lawsuit had broken but after the budget crisis had been discovered, Gelardin told Ross that his job was secure despite the budget problems. Finally, although the layoffs did continue even after Ross, ILR also made new hires and offered significant raises to its core management team.

Ross therefore raises a material question of fact as to the true reason for his termination, which must go to the jury. Since Gelardin made personnel decisions on his own, his representation that he terminated Ross based only on the budget is subject to the jury's assessment of his credibility. Although it is clear that the agency's budget problems could have justified Ross's termination, Ross is entitled to convince the jury that the budget was not in fact the basis for Gelardin's decision. Ross's evidence is certainly sufficient to cast that explanation into doubt and allow a jury to rule that it was only pretextual.

The alternative analysis proposed by ILR would apply if this case is regarded as one of mixed motives: i.e. that budgetary constraints and Ross's involvement in the lawsuit both

---

[3] Although Ross disputes the extent of the budget problems, his evidence does not cast any doubt as to the existence of a serious budget crisis at ILR.

12

1  played a role in the adverse employment decision.  In that case, the burden of persuasion
2  would not shift, and Ross would have to "prove, by a preponderance of the evidence, that
3  [his protected activity] was the 'but-for' cause of the challenged adverse employment
4  action." *Gross*, 129 S. Ct. at 2352.  "In determining whether a particular factor was a but-for
5  cause of a given event, we begin by assuming that that factor was present at the time of the
6  event, and then ask whether, even if that factor had been absent, the event nevertheless would
7  have transpired in the same way." *Price Waterhouse*, 490 U.S. at 240 (plurality opinion).  In
8  other words, Ross must show that, in the absence of his prosecution of the Basketball Town
9  lawsuit, he would not have been terminated at that time.

10      Again, Ross has presented sufficient evidence to have this question presented to the
11 jury.  The cumulative evidence, as discussed above, is sufficient to suggest that Gelardin may
12 have terminated Ross because of his involvement in the suit, and that absent Ross's
13 prosecution of the Basketball Town case, he would not have lost his job on October 3, 2007.
14 It is up to the jury to decide whether they believe Gelardin's explanation or are swayed by
15 Ross's evidence.

16      Summary judgment is therefore DENIED as to Ross's ADA retaliation claim.

17

18 **II.  California Labor Code Section 1101**

19      Ross's second cause of action is for violation of section 1101 of the California Labor
20 Code, which provides that "[n]o employer shall make, adopt, or enforce any rule, regulation,
21 or policy . . . [c]ontrolling or directing, or tending to control or direct the political activities
22 or affiliations of employees."  ILR argues that Ross cannot prevail on this claim because his
23 prosecution of the Basketball Town lawsuit was not political, and he cannot show that ILR
24 has a "rule, regulation, or policy" governing its employees' political activities.  Ross, in
25 response, represents that the lawsuit was political in nature, and offers evidence that ILR had
26 a policy not to pursue ADA access claims as an agency.

27      The California Supreme Court has defined "political activity" in the section 1101
28 context as extending beyond "partisan activity" to include "the espousal of a candidate *or a*

13

*cause*, and some degree of action to promote the acceptance thereof by other persons." *Gay Law Students Ass'n v. Pac. Tel. & Tel. Co.*, 24 Cal. 3d 458, 487 (1979) (emphasis in original) (internal citation omitted). The U.S. Supreme Court has recognized "participation in litigation" as an activity that can be political in character. *Id.* (citing *NAACP v. Button*, 371 U.S. 415, 429 (1963)). In denying ILR's motion to dismiss on this charge, this Court recognized that "[l]itigation need not be trail-blazing to be political," but deferred answering the question of whether "this particular lawsuit was political." Order Granting in Part and Denying in Part Mot. to Dismiss (Doc. 82), at 10. ILR urges the Court to answer this question now in the negative, because Ross has not adduced any evidence to show that he attempted to publicize his lawsuit and thereby "promote the acceptance" of his cause of disability rights by others. Ross characterizes his pursuit of the lawsuit as part of his longtime activism on behalf of the disabled, and points to the publicity generated by the lawsuit – which included at least one article in defense of his lawsuit – as evidence that he did act to promote acceptance of his cause.

Whether or not this lawsuit should be considered political is a difficult question that this Court need not answer. Even if Ross were able to establish that his pursuit of the Basketball Town lawsuit was political, he would still have to demonstrate that ILR had a "rule, regulation, or policy" controlling or directing such activities. The California Supreme Court, in addressing a challenge to the constitutionality of section 1101, cited the following definition of "policy": "'A settled or definite course or method adopted and followed by a government, institution, body, or individual.'" *Lockheed Aircraft Corp. v. Superior Court*, 28 Cal. 2d 481, 485-86 (1946) (quoting Merriam Webster Dictionary (2d. ed.)).

No evidence before this Court shows the existence of such a "rule, regulation, or policy." Ross has only shown that ILR's policy was not to pursue ADA lawsuits *as an agency*. Ross recalled, for example, one occasion when Susan Rotchy stated that *ILR* should never file an ADA lawsuit. However, what section 1101 requires is a showing that ILR had a policy that impeded the political expression of its *employees*. Even if Ross were to succeed in his claim that his termination was an act of retaliation for his pursuit of the Basketball

14

1 Town suit, that isolated episode would be insufficient to establish that ILR, as a policy,
2 barred its employees from pursuing ADA claims in court or otherwise engaging in political
3 activity.[4]

4 Since Ross has failed to meet his burden on summary judgment to set out specific
5 facts showing a genuine issue for trial, summary judgment is GRANTED to ILR as to this
6 claim.

## III. Unlawful Termination in Violation of Public Policy

California law allows a discharged employee to "maintain a tort action and recover damages traditionally available in such actions" when an employer's discharge of that employee "violates fundamental principles of public policy." *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 170 (1980). Ross's third claim is for wrongful termination in violation of public policy, and is premised on the alleged violations of the ADA and section 1101. This Court already concluded, on ILR's motion to dismiss, that a violation of either statute is sufficient to state a tort claim for wrongful termination under California law.

ILR's sole basis for summary judgment on this cause of action is its argument that summary judgment should be granted as to the two underlying statutory claims. Since the ADA retaliation claim survives, the wrongful termination claim does, as well. Summary judgment as to this claim is DENIED.

## IV. Attorneys' Fees

The second and third causes of action in the TAC – for violation of section 1101 and wrongful termination – include a prayer for attorneys' fees under section 2699(g)(1) of the California Labor Code, which is part of the California Labor Code Private Attorneys General

---

[4] At hearing, Ross's counsel argued that the California Court of Appeal's decision in *Ali v. L.A. Focus Publication*, 112 Cal. App. 4th 1477 (2003), suggests that a policy can be inferred from one episode. In *Ali*, however, the defendant acknowledged the existence of the policy at issue, asserting that "it was entitled to terminate its relationship with Ali for speaking in a manner that contravened the editorial policy of the paper." *Id.* at 1486-87. *Ali* therefore does not support Ross's position.

15

Act of 2004 ("PAGA"). Section 2699.3 sets forth procedural requirements with which an aggrieved employee must comply before bringing a civil action under a provision of the Labor Code that provides for a civil penalty. Ross alleges that he has complied with those requirements and is pursuing "claims pursuant to California Labor Code Section 2699 *et seq.*, including but not limited to claims for attorney fees under Section 2699(g)(1)." TAC ¶ 14(c). Section 2699(g)(1) provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." ILR argues that Ross is not entitled to attorneys' fees under this statute because he is not prosecuting this action on behalf of other current or former ILR employees, and because he is not claiming civil penalties under PAGA.

There is a simpler basis for denying Ross's prayer for attorneys' fees under PAGA at this juncture, however. The labor code provisions that an aggrieved employee can enforce via the PAGA are listed in section 2699.5; of Ross's causes of action, only the alleged violation of section 1101 could be enforced in that manner. Since the Court has granted summary judgment to ILR as to the section 1101 claim, Ross's prayer for attorneys' fees pursuant to the PAGA must fail, as well. Ross's counsel conceded this point at hearing.

**CONCLUSION**

ILR's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Summary judgment is granted to ILR as to the second cause of action for violation of section 1101, and attorneys' fees pursuant to the PAGA are therefore unavailable. Summary judgment is denied, however, as to Ross's first and third causes of action, for retaliation in violation of the ADA and wrongful termination in violation of public policy.

**IT IS SO ORDERED.**

Dated: 7/21/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

16